Albert WECHSLER, Appellant,

v.

The STATE of Texas, Appellee.

No. 34633.

Court of Criminal Appeals of Texas.

June 27, 1962.

On Motion for Rehearing Oct. 31, 1962.

Nicholas & Barrera, Roy R. Barrera, San Antonio, for appellant.

Charles J. Lieck, Jr., Criminal Dist. Atty., Jack Paul Leon, Asst. Criminal Dist. Atty., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is false swearing; the punishment, 2 years.

During the course of a murder trial in San Antonio, it was discovered that defense attorneys, among them one Abe San Miguel, had in their files certain photostatic copies of statements of witnesses which were a part of the State's file in the case. Following this, each employee of the district attorney's office, including appellant (who was an investigator employed by such department), upon being called upon by their superior, made an affidavit stating that they had not delivered the statements of the witnesses in the murder case to any unauthorized person, and particularly not to Mr. Abe San Miguel. This affidavit of appellant forms the basis of this prosecution. In order to show that appellant executed the affidavit, the State called Emma Anderson, the notary public who administered the oath to appellant, and assistant district attorney Gittinger, who witnessed the making of the affidavit by appellant. In order to show that such affidavit was false, the State called the following witnesses:

Assistant district attorney Benavides testified that during the trial of the murder case he saw certain photostatic copies on the counsel table in front of Abe San Miguel, that he recognized the signature of two employees of his department, and very soon thereafter one of defense counsel marked one of such statements for identification and attempted to use the same to impeach a State's witness then on the stand. At this juncture, an inquiry was conducted; the prosecutors took the statements of their witnesses out of the possession of defense counsel, and defense counsel were questioned as to how they had acquired possession thereof. One counsel declined to answer on the grounds that his answer might incriminate him, and Abe San Miguel was very vague in this explanation as to how the statements had come into his possession; he denied that they were his and did not recall when he had first seen the statements *but did admit having seen them prior to the trial.*

Abe San Miguel testified that sometime prior to the trial of the murder case he asked appellant if he could procure the State's file containing the statements of their witnesses, that appellant agreed to make the same available to him, and that when they were delivered to him he had photostatic copies of the same made and returned the originals to appellant. He stated that after the trial of the murder case and after the incident above referred to had received wide publicity, he, in company with an attorney he had employed to represent him, approached Mr. Charles Lieck, the district attorney, and secured from him a promise not to prosecute whoever the culprit might be if he (the culprit) would come forward, identify himself and be discharged from further employment with the district

attorney's office. He stated that after securing such assurance he talked to appellant, who agreed to admit his dereliction in duty, and that he delivered to his lawyer the sum of $1,000 to be delivered to appellant in the event Mr. Lieck did in fact discharge him.

Sometime after appellant admitted his complicity to his superior and had been discharged, the grievance committee for the State Bar of Texas began to inquire into the professional conduct of Mr. San Miguel, and appellant appeared before them as a witness and again related how at Mr. San Miguel's suggestion he had delivered to him the State's file in the murder case. Two members of that committee testified in the instant trial.

Following this, appellant was indicted for the instant offense. The above will serve as a historical development of the case, and further facts will be discussed in connection with appellant's contentions on appeal.

■ Appellant contends that the court erred in overruling his motion for continuance because the court called up a case against appellant out of its numerical order. This contention, though often asserted, has been put to rest by this Court in Sowers v. State, 157 Tex.Cr.R. 345, 248 S.W.2d 949, and the cases there cited. We observe that no abuse of discretion has here been shown.

■ He next contends that the court erred in declining to permit him to examine the jury panel individually and outside the hearing of each other. This contention is without authority to support it in non-capital cases where no injury is shown. Bartlett v. State, 123 Tex.Cr.R. 464, 59 S.W.2d 157, and Lacy v. State, 168 Tex.Cr.R. 220, 325 S.W.2d 392.

■ In this connection, it is contended that the court erred in refusing to quash the panel after one of the members made a statement during the course of her examination. There appears in the record before us a separate document denominated "Portion of Voir Dire Examination," but the same has not been approved by the court or counsel and cannot be considered. This question is therefore not before us for review.

The next contention requires a more extended discussion. As stated, in order to prove the execution of the affidavit in question, the State called Emma Anderson, who testified that she had been an employee of the district attorney's office and a notary public for a number of years, that she renewed her bond as a notary every two years, and that appellant swore to the affidavit in her presence. When a question was raised as to Anderson's qualification as a notary, the certificate of the Secretary of State evidencing such fact was introduced. During the course of her cross-examination, Anderson stated that in order to qualify as a notary she had, according to her best recollection, taken her oath and bond to the office of a surety company where she had executed the same in the presence of another notary, but the court excluded her testimony as to how she had executed her oath and bond in prior years. Appellant called Mary S. Burt, whose name appeared on Anderson's bond and oath, and she testified, in the absence of the jury for the purpose of perfecting appellant's bill of exception, that she had no independent recollection of having sworn Anderson. Counsel then attempted to question her as to the general practice of the bonding company where she worked and whether or not they usually received the bonds in the mail already signed. The court sustained the State's objection to general practice and required the witness to limit her testimony to the particular transaction in question, but did permit the witness to testify that it was possible such had occurred in Anderson's case.

■ is not contended that Anderson was shown to have any complicity in the making of the false affidavit by appellant, and we conclude that the evidence is sufficient to show that the witness Anderson

was a de facto notary public, if not de jure, and that the court did not err in curtailing the cross-examination of the witness Burt nor in refusing to permit appellant to develop Burt's testimony before the jury. See Woodson v. State, 24 Tex.Cr.R. 153, 6 S.W. 184, and De Lucenay v. State, Tex.Cr.App., 68 S.W. 796. In this connection, it is to be observed that at appellant's request and out of an abundance of caution the court instructed the jury to acquit appellant if they found that Emma Anderson was not a notary public.

Appellant next contends that the court erred as a matter of law in permitting the two members of the grievance committee to testify as to the admissions made by appellant before said committee. During the course of the trial, the district attorney made certain statements and explanations of his conduct which were considered by the court to be under oath. This was developed in the absence of the jury for the purpose of perfecting a bill, at the conclusion of which the court stated that he found that a fact issue had been raised. We have, however, searched this record and have not found where such testimony was ever offered for the jury's consideration. This being the case, we are confronted with the sole question of whether or not appellant's statements to the grievance committee were inadmissible *as a matter of law*. He contends that such statements were not fully and voluntarily made because of the prior promise of the district attorney not to prosecute for false swearing if the guilty person would admit his identity and be discharged, which promises were communicated to appellant, and the further fact that at a later date when the grievance committee met and invited appellant to appear before them appellant told District Attorney Lieck of such invitation and Lieck advised him to go ahead and tell the committee the truth.

At this juncture, it should be noted that appellant did not testify, and we must rely upon the testimony set forth above to show that as a matter of law he was induced to make the admissions before the committee.

In Stewart v. State, 124 Tex.Cr.R. 632, 64 S.W.2d 782, the accused was told by a Ranger at some time during his interrogation that if he told the truth he (the Ranger) would ask the prosecutor to recommend to the jury a life sentence instead of death. Appellant did not testify that such promise operated as an inducement which caused him to confess at a later date to the district attorney at Corsicana. This Court, speaking through Judge Hawkins, said that we would not hold as a matter of law that such confession, in the absence of appellant's testimony on the issue, was induced by the earlier promise of the Ranger.

In the case at bar, appellant asks that we hold, without the aid of appellant's testimony, that the promise made during the district attorney's investigation in which he said that he would not initiate prosecution against appellant carried over and was operating on appellant's mind when some two months later he appeared before the grievance committee. This we are not prepared to do. It should be borne in mind that at no time prior to his appearance before the committee was appellant ever in custody, and the sole question before us is whether appellant was induced to make the admissions against interest to the grievance committee. We have concluded that the record before us here fails to establish affirmatively that such was the case.

Appellant's last contention is that the evidence is insufficient to support the conviction under Article 723, Vernon's Ann.C.C.P., because of the conflicts in the testimony of the witness San Miguel which prevent his being a credible witness. However reprehensible may have been San Miguel's actions in the premises, there is no evidence which would show that he was in any way connected with the making of the false affidavit which forms the basis of this prosecution. His testimony was strongly corroborated by the extra judicial admissions of appellant to the grievance committee.

The court instructed the jury to acquit if they found that San Miguel was not a credible person or was an accomplice to the offense of false swearing.

Finding the evidence sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Presiding Judge.

 Upon further consideration we have concluded that the appellant's admissions in the nature of a confession before the Grievance Committee should have been excluded as involuntary.

Appellant made the same admissions of guilt to the district attorney under promise that he would not be prosecuted.

 The trial judge correctly held that without the approval of the court the district attorney had no authority to grant immunity to the appellant. See Washburn v. State, 164 Tex.Cr.R. 448, 299 S.W.2d 706.

 The trial court also correctly excluded testimony as to admissions or statements made by appellant to the district attorney, holding same inadmissible as having been induced by promises of the district attorney. Cook v. State, 32 Tex.Cr.R. 27, 22 S.W. 23; Womack v. State, 16 Tex.App. 178; Neeley v. State, 27 Tex.App. 324, 11 S.W. 376; Clayton v. State, 31 Tex.Cr.R. 489, 21 S.W. 255.

 The confession statute is not applicable, appellant not being in custody at either time. However, it would appear that the prior admission or confession having been induced by promise of the district attorney and thereby rendered involuntary and inadmissible, the presumption is that the same force which produced such confession was still in motion at the time of the subsequent confession. Cavazos v. State, 143 Tex.Cr.R. 564, 160 S.W.2d 260; Ab-

ston v. State, 136 Tex.Cr.R. 152, 123 S.W.2d 902; Thompson v. State, 124 Tex.Cr.R. 440, 63 S.W.2d 849.

We find no evidence in the record from which the court or the jury could have found that when appellant testified before the Grievance Committee he was no longer relying upon the district attorney's promise that he would not be prosecuted.

On the other hand, it appears that the appellant advised the district attorney that he had been called to go before the Grievance Committee and was told to tell them the truth and that he did tell the truth as to providing the documents.

Appellant's motion for rehearing is granted, the affirmance is set aside and the judgment is reversed and the cause remanded.