James Claude LATTIN, Appellant,

v.

Harold A. COX, Warden, New Mexico State Penitentiary, Appellee.

No. 8326.

United States Court of Appeals Tenth Circuit.

Jan. 24, 1966.

Givens L. Adams, Oklahoma City, Okl., for appellant.

L. D. Harris, Sp. Asst. Atty. Gen. (Boston E. Witt, Atty. Gen., on the brief), for appellee.

Before PICKETT, LEWIS and HILL, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from a denial of a petition for habeas corpus by the United States District Court for New Mexico after an evidentiary hearing. Appellant is incarcerated in the New Mexico State Penitentiary. He was convicted, based upon his pleas of guilty, of the offenses of rape and involuntary manslaughter and thereafter sentenced to not less than one nor more than ninety-nine years on the rape charge and not less than one nor more than ten years on the involuntary manslaughter; each sentence to run concurrently. He has exhausted his state remedies.

At a pre-trial hearing on the matter, appellant presented several issues, to-wit: That the offenses were committed on an

Indian Reservation thus depriving the New Mexico Courts of jurisdiction; that no warrant was issued for his arrest; his pleas of guilty were not voluntary; that a statement he made to police officers was taken without his knowledge and hence illegal; that his property was taken by an illegal search and seizure; and finally he complains of cruel treatment and delay in being brought before a Justice of the Peace.

A hearing was then held and the trial court made findings of fact and conclusions of law and concluded that the appellant was not denied counsel at any critical stage of the proceeding; that the offenses were not committed on an Indian Reservation; that the pleas of guilty were voluntary and that such a guilty plea waived any irregularities in the arrest, the search and seizure of property, and the incriminating statement he made, particularly in light of the fact that such evidence was not used against him at trial.

▮ Through his court appointed counsel he urges two main grounds for reversal.[1] First, that the pleas of guilty were involuntary because induced by a promise of leniency and threats of greater punishment and second, that he was denied counsel during his interrogation which was a critical stage of the proceeding, therein placing his reliance on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. We agree with the trial court that the pleas of guilty were voluntary and therefore it is not necessary to decide the other issues presented because the plea of guilty, in the absence of a showing of prejudice to the accused, was a waiver of all non-jurisdictional defects. Mahler v. United States, 10 Cir., 333 F.2d 472; Brown v. Cox, 10 Cir., 347 F.2d 936; Pearce v. Cox, 10 Cir., 354 F.2d 884.

We need not set forth all the facts but will confine ourselves to the main issue presented. From his own testimony at the hearing below, it appears that on the evening of February 23rd, 1960, appellant and a companion commenced drinking liquor and after several stops at bars in Farmington, New Mexico, they went to the El Placito Bar where they saw the deceased Indian girl, Anna Mae Greyeyes, who was accompanied by two male Indians. Appellant and his companion followed the three Indians from the bar to a place called Squaw Bottoms where a fight ensued between appellant and the male Indians. According to Lattin, Miss Greyeyes then entered his pickup truck and he then drove to an old quarry where he had intercourse with her. After leaving the quarry and while being pursued by the car driven by the male Indians, Miss Greyeyes either jumped or fell out of the pickup onto the road and was killed.

Appellant was arrested the next day and was questioned for several days thereafter until March 2nd, when he apparently made an incriminating statement to the Sheriff. Several months later, Lattin's relatives hired an attorney to represent him, but he was eventually replaced by another attorney named Loehr who was retained by the accused and who represented him thereafter. Loehr is duly licensed and admitted to practice law in New Mexico.

Loehr's first action in behalf of Lattin was to secure his release on bond and to have the case remanded to the Justice of the Peace for a preliminary hearing. The record shows that after the preliminary hearing, Lattin was charged in three separate cases, by information in the state district court, with murder in the first-degree, kidnapping and rape; that the newly retained counsel made an exhaustive investigation of the case, interviewing all of the prospective witnesses, procured all pertinent records of Lattin's prior convictions, his commitments to the Colorado State Mental Hospital, his juvenile record and had his

1. Apparently appellant has abandoned his contention that the offenses were committed on an Indian Reservation. In any event, the habeas court found, based upon the testimony of Sheriff Sullivan, that they were not committed on a reservation.

client subjected to a psychiatric examination. At this point, it seems important to set out the rather impressive professional background of the retained counsel. He was admitted to the New York bar in 1936 and the New Mexico bar in 1953; from 1937 to 1942 he was an assistant attorney general of the State of New York; from 1943 to 1948 he was assistant district attorney of New York County; from 1948 to 1953 he engaged in the private law practice in the State of New York and "handled quite a few criminal cases"; after moving to New Mexico in 1953 he served one term as assistant district attorney of San Juan County and after that has "specialized in criminal defense work".

The crucial facts here are those surrounding the appellant's pleas of guilty in the New Mexico District Court. On the day of his scheduled trial, Lattin recalls his attorney telling him in effect that the District Attorney was contemplating trying him as an habitual criminal[2] unless he pleaded guilty to certain charges and that Loehr thought he could "go in with a charge of kidnapping or the charge of manslaughter". According to Lattin's testimony, Loehr then told him that he was going to try and make a deal with the District Attorney. Lattin said it was later in court before he realized he was facing only the charges of rape and involuntary manslaughter and that the kidnapping and assault with a deadly weapon charges were dismissed. He further stated he was not advised of the possible sentence he might receive on the charges to which he pleaded guilty.

■ This retained counsel in the state court testified in the court below as a witness for the respondent. He carefully recounted the work done by him in connection with the defense of Lattin. In the end, after explaining to his client the right to a jury trial and the other Constitutional guarantees and procuring an agreement from the prosecuting attorney to let the client plead to the crimes of rape and involuntary manslaughter, he advised his client to enter a plea of guilty. In attacking the plea to each count to be involuntary appellant now points to the fact that each plea of guilty was entered upon the record by counsel and not by the accused. This is technically true but in each instance the trial judge inquired of the accused, "And the plea is voluntary on your part?" and Lattin replied, "Yes, sir." Immediately thereafter the prosecuting attorney moved to dismiss the kidnapping charge against Lattin and agreed in open court that he would not refile the charge of assault with a deadly weapon against the defendant.

■■ It is settled law that a guilty plea in either state or federal courts is inconsistent with due process if obtained involuntarily through promises or threats, Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302; Putnam v. United States, 10 Cir., 337 F.2d 313, and may be collaterally attacked by habeas corpus. Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009; United States v. LaVallee, 2 Cir., 319 F.2d 308. As the Supreme Court said in the Kercheval case, supra, "Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences. When one so pleads he may be held bound. (citation omitted) But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence."

■■ The mere fact that the prosecuting attorney agreed to dismiss or reduce certain counts if the accused would plead guilty does not necessarily render a plea involuntary. Vol. 22 C.J.S. Criminal Law § 423(5). The proper question to decide is whether in light of all the

**2.** The record reveals that Lattin was convicted in 1952 of a fraudulent check charge and in 1953 concerning an auto theft in Denver.

facts including the advice of competent counsel the plea was made voluntarily. See Martin v. United States, 5 Cir., 256 F.2d 345. In this regard, the findings of the lower court must be sustained unless of course they are "clearly erroneous." Rule 52(a), Fed.Rule Civ.Proc.

 We believe the evidence available to the court below justified its finding that the plea was voluntary. At arraignment, the New Mexico Court obtained an affirmative response from Lattin's retained counsel when asked if he had advised the accused of his Constitutional rights. Lattin himself told the court his plea was voluntary. But the most compelling reason to believe the plea was voluntary is the fact that at the time the plea was entered, Lattin was represented by a highly capable attorney who had been retained to defend him. There can be no doubt that Loehr did encourage Lattin to plead guilty in light of the agreement with the District Attorney. Yet Loehr recognized, after a thorough preparation of the case, that the State had a strong case against Lattin and that if he could have Lattin prosecuted only upon lesser charges and as a first offender instead of an habitual criminal, his chances for parole would be greatly enhanced. The District Attorney for the State of New Mexico did not threaten Lattin with any action that was illegitimate or any charges that were unrealistic, see Kent v. United States, 1 Cir., 272 F.2d 795, but only advised his attorney of the full measure of appellant's potential criminal responsibility. Merely because appellant then chose to rely on his own attorney's advice and plead guilty to the reduced charges rather than trust his fate to a jury on additional and more serious charges does not establish that the plea was involuntary.

After a careful consideration of the entire record before us, we must conclude that the pleas of guilty entered by Lattin in the state court to the charges of involuntary manslaughter and rape were voluntarily and understandingly made and were not induced by any promises or threats. Such pleas of guilty waived all nonjurisdictional defects in proceedings had prior thereto.[3]

Affirmed.