431 P.2d 91

**Application of Angelino Paul BUCCHERI for a Writ of Habeas Corpus.**

**No. 2 CA–HC 53.**

Court of Appeals of Arizona.

Aug. 4, 1967.

Giles & Moore, by Charles M. Giles, Tucson, for petitioner.

Darrell F. Smith, Atty. Gen., James S. Tegart, Asst. Atty. Gen., Phoenix, for respondent.

MOLLOY, Judge.

The petitioner applied to this court for a writ of habeas corpus after the summary denial of a petition for habeas corpus in the superior court, Pinal County. The factual allegations of the petition filed in this court raised some doubt as to the validity of the petitioner's conviction because of the constitutional issues presented. We therefore concluded that, had a like petition been filed in the superior court, a summary denial of the petition, without a hearing, may have been erroneous.

█ The Supreme Court of Arizona is vested with authority to issue writs of habeas corpus and make such writs returnable before a superior court or judge thereof. Art. 6, § 5, Ariz.Const., A.R.S.; A.R.S. § 13–2003. Although the court of appeals has jurisdiction to issue writs of habeas corpus, A.R.S. § 12–120.21, subsec. A (4), there is no statute vesting this court with authority to make such writs returnable to the superior court. See State v. Sheppard, 2 Ariz.App. 242, 407 P.2d 783 (1965). As indicated in *Sheppard*, this court does not have proper facilities for conducting fact-taking hearings. (2 Ariz.App. at 245, 407 P.2d 783.) Substance being of the essence, the appellate courts of this state authorized to grant relief by extraordinary writs are inclined to grant appropriate relief notwithstanding the writ applied for is labeled otherwise, Goodman v. State, 96 Ariz. 139, 140, 393 P.2d 148 (1964); State ex rel. Ronan v. Superior Court, 95 Ariz. 319, 390 P.2d 109 (1964). Though the petitions for habeas corpus filed contest the legality of the petitioner's detention in the state prison in Pinal county, they are in essence a collateral attack upon a judgment of conviction and sentence rendered in a criminal action in the superior court in Maricopa county. Oswald v. Martin, 70 Ariz. 392, 397, 222 P.2d 632 (1950). Accordingly, we have issued a writ of certiorari to review both the denial of the habeas corpus petition in Pinal county and the judgment and conviction in Maricopa county.

█ We believe we act within the scope of our authority in so doing. This is a statutory court, and there is but a "single"

court of appeals in this state, A.R.S. § 12–120, subsec. A. There is also but a "single" superior court in this state, Art. 6, § 13, Ariz.Const. Venue has been held not to be jurisdictional. Sil-Flo Corporation v. Bowen, 98 Ariz. 77, 402 P.2d 22 (1965). We conceive that the responsibility for this case is with this division through the filing of a writ of habeas corpus invoking jurisdiction granted by A.R.S. § 12–120.21, subsec. A (1), and that the venue is appropriate because of allegations that the petitioner is legally detained in Pinal county, one of the seven counties in which appeals from the superior court are taken to this division. A.R.S. § 12–120.21, subsec. B. Though admittedly we are exploring new ground procedurally, under these particular circumstances, we reject the State's contention that we were without jurisdiction to issue a writ of certiorari as to a proceeding which occurred in the superior court sitting in Maricopa county.

An examination of the record in the Pinal county court establishes that the petition for habeas corpus filed in that court differs substantially from that filed here. The main thrust of the petition in the lower court is that the petitioner was held for twenty-three days after his arrest on a felony charge without "arraignment" [1] before a magistrate in violation of A.R.S. § 13–1417, [2] and that this in itself invalidated the conviction, partial reliance being taken upon McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

It has been held in this state that a "flagrant" (92 Ariz. at 73, 373 P.2d 583) violation of the counterpart statute, A.R.S. § 13–1418, pertaining to arrest without a warrant, for a period of 79 days, does not invalidate a conviction. State v. Maldonado, 92 Ariz. 70, 373 P.2d 583 (1962). It is understandable, therefore, that insofar as the petition below relied upon the failure to bring the accused "without unnecessary delay" before a magistrate, the petition was denied.

However, in the lower court we also find included in the petition the following allegations, which cause us some concern:

"That such delay [delay in "arraignment"] was deliberate and purposeful, occurring for the reasons of intimidation and duress pursuant to a planned means of obtaining an induced plea of guilty * * *.

*　　*　　*　　*　　*　　*

"During the period, December 29, 1965, to January 19, 1966, petitioner was subjected again to many periods of interrogation, whereat he (petitioner) was informed that other charges would be filed if he succeeded in beating the charges that had been filed, and that one way or another petitioner was going to prison this time and that the longer it took the police to nail him (petitioner) the greater the sentence would be, in the end.

"On or about 17th or 18th, petitioner who was going through this procedure for the second time,[3] thus having suffi-

---

1. Though the petitioner refers to such an appearance as an "arraignment," it in fact was not such, as no plea may be accepted by the magistrate on a felony complaint. Rules 16–33 inclusive, Rules of Criminal Procedure, 17 A.R.S.

2. Applicable statutes require that a person arrested be taken " * * * without unnecessary delay * * * " before a magistrate, whether arrested with warrant, A.R.S. § 13–1417, or without, A.R.S. § 13–1418. Upon being so brought the accused is informed of the charge against him, of his right to counsel at preliminary examination, and of his right to

waive preliminary examination. Rule 16, Rules of Criminal Procedure, 17 A.R.S.

3. The petitioner alleged that he had been previously arrested in July of 1965 for vagrancy, unlawful possession of burglary tools, and attempted burglary, and that these charges had been dismissed " * * * after many sessions of interrogation" upon the petitioner's agreement to return to California to answer charges pending there. After " * * * being exonerated * * * " of these California charges, the petitioner alleges he returned to Arizona on December 27, 1965, to be arrested again for

cient reason to believe that the police would one way or another finally get him convicted of some crime, agreed to plead to the crime of attempted burglary without the prior, then and only then did the interrogations and false accusations cease."

In this court, the petitioner's pleading includes these assertions and is directed more at the contention of a coerced plea of guilty. The petition is verified and is supported by an affidavit containing factual allegations not contained in the petition below. Among these additional facts are:

(1) Direct quotations purportedly made by arresting officers which might indicate that the failure to bring the petitioner promptly before a magistrate for "arraignment" was deliberate and intentional in order to induce a confession from the petitioner;

(2) That when the petitioner was furnished counsel at his "arraignment" before the magistrate, he was informed by his counsel that in view of his agreement to plead guilty, it would be "futile" to insist upon a trial;

(3) "That Petitioner does not believe himself to be guilty of anything more than possibly being intoxicated on a public street";

(4) "That Petitioner did not want to enter a guilty plea but did so because of fear (of a long prison term) and the intensive pressure upon him to plead guilty";

(5) "That Petitioner in every way (except the plea) and to everyone has maintained his innocence"; and

(6) "That he was not aware nor was he ever informed that prior to sentencing he could change his plea and that Superior Court Judges do not penalize a defendant for exercising his right to trial by jury."

vagrancy, unlawful possession of burglary tools, and attempted burglary. An examination of the complaint filed on December 29, 1965, reveals that the De-

The writ of certiorari to the Maricopa county court has produced records which do not necessarily refute the petitioner's allegations, as in Application of Parham, 6 Ariz.App. 191, 431 P.2d 86 (1967), but, to the contrary, in some respects corroborate them. At the time of the acceptance of plea of guilty, there is very little to substantiate that the defendant was acknowledging his guilt as to a crime as to which he himself conceived himself guilty. The transcript reveals that the only dialogue touching upon actual guilt is the following:

"THE COURT: Mr. Buccheri, have you had a chance to discuss this with counsel?

"DEFENDANT BUCCHERI: Yes, I have.

"THE COURT: Are you aware, if you enter a plea of guilty, that this case will be assigned to a judge for imposition of sentence?

"DEFENDANT BUCCHERI: That's correct, sir.

"THE COURT: And, depending on that judge, he may give you time or he may give you probation?

"DEFENDANT BUCCHERI: That's correct.

"THE COURT: Do you wish to proceed with a plea of guilty in this cause?

"DEFENDANT BUCCHERI: I do, sir.

"THE COURT: The record may show the entry of the plea of guilty."

The record further reveals that though the warrant for the arrest of the defendant from the felony charge of which he stands convicted was issued on December 29, 1965, it was not served until January 20, 1966, the day upon which he was brought before a magistrate. Further, the record discloses that the charge of a prior conviction was dropped at time of sentence. The petition-

cember complaint does not pertain to the same occurrences as charged and dismissed in July, 1965.

er's assertion that he was held continuously in custody from December 29, 1965, to January 20, 1966, is unrefuted in the record.

We are presented with the problem of whether either one or both of these petitions alleged sufficient grounds for the holding of a factual hearing to determine the validity of a plea of guilty when charges of "fraud and duress" have been made. These petitions are collateral attacks upon a final judgment, and, as such, demand consideration only to the extent that they raise questions which render the judgment void. State v. Court of Appeals, Division Two, 101 Ariz. 166, 416 P.2d 599 (1966); Franklin v. Eyman, 3 Ariz.App. 501, 415 P.2d 899 (1966); Applications of Oppenheimer, 95 Ariz. 292, 389 P.2d 696 (1964), cert. den. 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311 (1964).

In contemplating such an attack as this, presumptions favor the regularity and validity of the judgment rendered below. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954); McKinney v. United States, 93 U.S.App. D.C. 222, 208 F.2d 844 (1953); Twining v. United States, 321 F.2d 432 (5th Cir. 1963), cert. den. 376 U.S. 965, 84 S.Ct. 1126, 11 L.Ed.2d 982 (1964); Aiken v. United States, 191 F.Supp. 43 (D.C.1961), aff'd 296 F.2d 604 (4th Cir. 1961).

However, the presumption of regularity must yield, at least to the extent of granting a factual hearing, to verified assertions of fact not conclusively rebutted by the record which show that a plea of guilty was "involuntary," thus rendering the plea void. The degree of volition on the part of the accused which is essential to lend validity to a plea of guilty has been variously expressed. We quote from a few of the ever-increasing volume of cases dealing with attacks upon the voluntariness of a plea of guilty. In Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), it was indicated that a plea of guilty would be set aside if it were "* * * induced by promises or threats which deprive it of the character of a voluntary act * * *." (82 S.Ct. at 513.) Machibroda quoted with approval from Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009, 1012 (1927), as follows:

"'Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.'"

368 U.S. at 493, 82 S.Ct. at 513, 7 L.Ed. 2d at 478.

Machibroda cited Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830 (1940), which held that a plea of guilty could be set aside if the defendant in giving his plea was "deceived or coerced." Scott v. United States, 349 F.2d 641, 643 (6th Cir. 1965), would outlaw a plea if "* * * induced by a promise of lenient treatment * * *"; United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 253 (D.C.1966), would do the same if a promise of leniency was a "* * * prime factor * * *" in inducing the plea. Our own Supreme Court has indicated that a plea of guilty should be set aside if it was "* * * induced by fraud or duress * * *" (these two words appear in the subject petition), State v. Murray, 101 Ariz. 469, 421 P.2d 317 (1966).

The differences in verbiage used in these various pronouncements only hint at the diversities in the decisions themselves. Words such as "voluntary," "coercion," and "duress," which tend to be common denominators of these opinions, gloss over underlying chasms in concept. This is especially so when "plea bargaining" is involved, as it is so apparently in this case.

A basic schism in the thinking is brought to the surface in Shelton v. United States, 246 F.2d 571 (1957), a decision which divided the Fifth Circuit Court of Appeals of the United States. In its first rendition in that case, reported at 242 F.2d 101 (1957), the Court held that a plea of guilty given

in exchange for the prosecution's promise to cause certain other criminal charges to be dropped and to guarantee " * * * a sentence of only one year", (242 F.2d at 113) was an involuntary plea, even though the promises of leniency were kept to the letter. The objectionable feature found by the majority of the Court in this first opinion was that the defendant had not "voluntarily" acknowledged his guilt but rather was induced by promises of leniency. The majority opinion states:

."Justice and liberty are not the subjects of bargaining and barter."

242 F.2d at 113.

A dissenting opinion by Tuttle, Circuit Judge, became the majority opinion on rehearing, which is reported at 246 F.2d 571. The test adopted by a bare majority of the Court at that time was as follows:

" 'A correct statement of the applicable rule might be: a plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).' "

246 F.2d at 572, n. 2.

The previous majority opinion becomes the dissenting one, which is found, rephrased, at 246 F.2d 577. In it is the statement:

" * * * our differences arise not from the facts themselves but from our concept of what constitutes voluntariness."

246 F.2d at 579.

In this dissent, there is considerable interest expressed in the actual guilt or innocence of the accused:

. "The very statement of that practice [plea-bargaining], however, concedes that such promises or commitments *are inducements* for the accused to plead guilty. Such inducements in any particular case may be sufficient to elicit an *untrue* plea of guilty. The prevalence of that practice demonstrates the importance, indeed the imperative necessity, for the court itself to determine that the plea is so voluntarily made as to furnish reliable and trustworthy testimony *that the accused is in fact guilty.* For if, on judicial inquiry, the conclusion is that it was that promise, whether subsequently made good or not, that really brought about the guilty plea, then the plea was congenitally defective because it was the product of a decisive, potent, but extraneous force."

(Emphasis added) 246 F.2d at 579.

In certiorari proceedings to the United States Supreme Court, the Fifth Circuit Court opinion last released is reversed, on a confession of error by the Solicitor General, but also " * * * [u]pon consideration of the entire record * * *." 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958). If these *Shelton* opinions accomplish nothing more, they at least point up the underlying differences concealed below the high-sounding verbiage which is traditionally used.

That plea-bargaining is actually occurring in this country on a massive scale has been judicially noticed. Cortez v. United States, 337 F.2d 699 (9th Cir. 1964), cert. den. 381 U.S. 953, 85 S.Ct. 1811, 14 L.Ed.2d 726 (1965); Commonwealth ex rel. Kerekes v. Maroney, 423 Pa. 337, 223 A.2d 699 (1966); Barber v. Gladden, 220 F.Supp. 308 (D.C.1963), aff'd 327 F.2d 101 (9th Cir. 1964); Shelton v. United States, 242 F.2d 101, 115 (dissenting opinion) (5th Cir. 1957). Its existence has been recognized by our own Supreme Court, without any indication of disfavor. State v. Maberry, 93 Ariz. 306, 380 P.2d 604 (1963); State v. White, 102 Ariz. 18, 423 P.2d 716 (1967); and, State v. Martinez, 102 Ariz. 215, 427 P.2d 533 (1967). In *White,* our Supreme Court cited, with apparent approval, Com-

monwealth v. Maroney, supra, in which opinion the Pennsylvania Supreme Court said:

> "\* \* \* plea bargaining, when surrounded by proper safeguards, is frequently in the best interest of both the Commonwealth and the accused."

223 A.2d at 704.

In the *Maroney* case, it was accepted by the Court that the inducement for the defendant's submitting a plea of guilty to a charge of second degree murder was to avoid running the risk of "'\* \* \* going to the electric chair'" (223 A.2d at 703). It is difficult for this court to conceive of a more persuasive inducement.

It is very apparent from reading the decisions in this troublesome field of "voluntariness" that pleas of guilty are usually sustained when there have been coercive influences far greater than those which would be permitted if an ordinary contractual relationship were at stake. See Restatement of the Law, Contracts § 493, and illustrations thereunder.

The very fact that a person has been arrested and brought forcibly before the court for an arraignment at which he must publicly declare his guilt or innocence obviously runs counter to the fondest wishes of the accused. Most defendants can think of something better to do. When a defendant is promised a reduction in charge or the dropping of several counts of a multicount information or indictment, to say that he is not induced by "threat or promise" is to take some liberty with the English language and yet this is exactly the conclusion reached by courts.[4]

The difference between a "threat" and a "promise," in the context at hand, is nebulous. The prosecutor may "threaten" to file other charges or he may "promise" not to do so. There is little difference between the two expressions except in the emotional tone generated in the reader. To the average defendant, the whole situation is a threatening one, and in his mind it is most appropriate to use the word "threat" when referring to whatever statements a law-enforcement officer may make in connection with the bringing of other charges against him. And, the more unpunished crime the accused knows himself guilty of, the more menacing such "threats" will be. To the conscientious prosecutor, seeking to avoid what to him may appear the needless expense of a jury trial, plea-bargaining is not intimidation.

To say that any plea of guilty is "not voluntary," when hypnotism, drugs or aberrations of the mind are not present, is true in only a figurative sense:

> "The term 'a promise or a threat', as well as the term 'voluntary', are also misleading in another way; for they obscure the fact that (even when threats are used) the situation is always one of choice between two alternatives,—either one disagreeable, to be sure, but still subject to a choice. As between the rack and a false confession, the latter would usually be considered the less disagreeable; but it is none the less voluntarily chosen. The term 'voluntary', then, as describing the absence of the vicious element which excludes a confession, is, in ultimate exactness, unsound. All conscious verbal utterances are and must be voluntary; and that which may impel us to distrust one is not the circumstance that it is involuntary, but the circumstance that the choice of false confession is a natural one under the conditions. The choice of false confession

4. E. g., Lattin v. Cox, 355 F.2d 897 (10th Cir. 1966), held that defendant's guilty pleas to two counts with subsequent dismissal of third count were "voluntarily and understandingly made and were not induced by any promises or threats" (355 F.2d at 400); United States ex rel. McGrath v. LaVallee, 348 F.2d 373 (2d Cir. 1965), held that plea of guilty to second degree robbery (possible penalty of 30 years), which was reduced from charge of first degree robbery (possible penalty of 60 years), was "\* \* \* uninfluenced by threat or promise \* \* \*" (348 F.2d at 376).

is voluntary, but the false confession is associated with a prospect (namely, of ecape [sic] from present harm) so tempting that it is not in human nature to resist it."

3 Wigmore, Evidence § 824, at 251–52 (3d ed. 1940).

We agree with the statement found in a leading law review article[5] that " * * * no clear definition of 'voluntariness' has been formulated," and with Wigmore that the word "voluntary" is not sufficiently definite in the context at hand to be serviceable as a label for the critical factual issues under discussion. 3 Wigmore, Evidence § 826, p. 255 (3d ed. 1940).

■ Nor can we accept, until the United States Supreme Court becomes more explicit, the innuendo of that Court that a plea of guilty must run the same gauntlet of "voluntariness" as a confession. We refer to statements such as that found in Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942):

"For a conviction on a plea of guilty coerced by a federal law enforcement officer is no more consistent with due process than a conviction supported by a coerced confession."

62 S.Ct. at 966.

If pleas of guilty are to be equated with confessions insofar as "coercion" is concerned, then pleas of guilty involving plea-bargaining in any degree cannot stand the test.[6] At any time that a defendant is promised that other charges of a multi-count information are to be dismissed or that a charge is to be reduced, upon a plea of guilty, the inducement goes far beyond what is accepted as sufficient to invalidate a confession.

It is to be noted that neither the petition in the lower court nor the one presented here indicates that the petitioner did not understand what he was doing when he "copped a plea" to the attempted burglary charge. Nor is there any assertion that the prosecution failed to keep promises of dropping other charges. In evaluating the petitions, then, we are squarely presented with the dichotomy of philosophy which plagued the Fifth Circuit in the strange case of *Shelton*.

The nature of this choice can perhaps best be brought home by postulating the case of a defendant accused of first degree murder in this State, where the death penalty is still occasionally imposed. If such an accused were to come before a trial court on a motion by the county attorney to reduce the charge to second degree murder and the defendant were willing to enter a plea of guilty to this reduced charge, the trial court might very well ask the defendant whether he had actually killed the person whom he is charged with murdering. If the accused should respond that he certainly had not, as he was in Texas at the time of the alleged incident, few trial courts would be inclined to accept the plea of guilty, no matter how the accused and the county attorney might importune the court. And this would seem right and just to every-

5. 112 U.Pa.L.Rev. Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 865, 872 (1964).

6. Confessions have been outlawed because induced by threats or promises of such things as: threats to cut off state financial aid to defendant's infant children and have children taken from her if she did not "cooperate," Lynum v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963); refusal to allow defendant to call his wife until he confessed, Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); detective's promise to assist defendant if he would confess, United States ex rel. Everett v. Murphy, 329 F.2d 68 (2d Cir. 1964), cert. den. 377 U.S. 967, 84 S.Ct. 1648, 12 L.Ed.2d 737 (1964); implied promise of leniency in officer's statements that he would book defendant for burglary unless officer could check defendant's story and get to bottom of matter, People v. Boles, 221 Cal.App.2d 455, 34 Cal.Rptr. 528 (1963); police chief's statement that a confession would avoid death penalty, State v. Nelson, 63 N.M. 428, 321 P.2d 202 (1958); promise not to prosecute, Wechsler v. State, 172 Tex. Cr.R. 559, 361 S.W.2d 379 (1962).

one, except the accused and the county attorney, until we postulate further and have the defendant convicted of first degree murder and sentenced to death. Many of us may then ponder, for the first time, whether the defendant had a right to insist that his plea-bargain be honored. At least one court has suggested that there is such a right. Anderson v. State of North Carolina, 221 F.Supp. 930, 934, n. 5 (D.C.1963).

That the court in passing upon the validity of a plea of guilty should not be concerned with whether the defendant is actually guilty finds sustenance in such dicta statements as found in the early case of Kercheval v. United States, supra:

> "But, on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. *Such an application does not involve any question of guilt or innocence.*"

(Emphasis added) 274 U.S. at 224, 47 S.Ct. at 583, 71 L.Ed. 1009.

Broad statements to the same effect may be found in United States ex rel. Cuevas v. Rundle, 258 F.Supp. 647, 657 (D.C.1966); United States v. Tateo, 214 F.Supp. 560, 564 (1963); and Woodring v. United States, 248 F.2d 166, 169 (8th Cir. 1957). See also, Hoover v. United States, 268 F.2d 787, 790 (10th Cir. 1959); Gandy v. United States, 235 F.Supp. 373, 375 (1964). Of course, if we are equating confessions and pleas of guilty, such an approach has authoritative support in Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961).

A leading law review article arrives at the conclusion that the court should not be concerned with the actual guilt of the accused in accepting a plea of guilty, but only with whether there is sufficient credible evidence to convict him. Paradoxically, its line of rationalization is that there is a basic difference between confessions and pleas of guilty:

> "A guilty plea and a confession are analogous but distinct concepts. A confession is an averment that certain facts occurred, and is used as evidence in a fact-finding proceeding—trial—whose whole purpose is to determine whether the facts actually occurred. The nature of the trial proceeding requires that consideration be given to evidence, such as a confession, only to the extent that it has probative value, and, therefore, strict rules of admissibility have been formulated. On the other hand, the guilty plea is *not necessarily an admission that the defendant engaged in a criminal incident, but is a conclusion that there is sufficient evidence for a judge or jury to find that he did so.* As a result of this distinction, the guilty plea gives rise to a procedure for disposition of the case that is different from trial. *The court is no longer concerned with whether given facts occurred, but only with whether the defendant has made an informed determination that a judge or jury could find such facts on the prosecution's evidence.*"

(Emphasis added) 112 U.Pa.L.Rev. Guilty Plea Bargaining: Compromises by Prosecutors to Secure Guilty Pleas, 865, 884 (1964).

■ This view, upholding a plea-bargain if understandably made, regardless of "actual" guilt, has inescapable pragmatic validity. Neverthless it is our judgment that its very pragmatism will make it unacceptable to a majority of the present constituency of the Supreme Court of the United States. The view smacks too much of mercantilism to receive countenance in that Court, which appears to be dedicated to humanistic values. We, therefore, take the "high road," the guideposts of which may be found in the dissenting opinion in the last rendition of the Fifth Circuit in the oscillating case of *Shelton*, which opinion would appear to be that favored by the Supreme Court of the United States:

> "From the time the indictment is presented or information filed to the entry of the judgment of conviction, and throughout all forms of review of that judgment, the *primary matter to be determined is the guilt or innocence of the*

*accused.* We err grievously when we allow ourselves to be diverted by other inquiries, such as whether the accused made a good bargain and whether the bargain was kept; the sole inquiry should remain, *was the plea of guilty made under such circumstances as to constitute it reliable and trustworthy evidence of the accused's guilty of the offense with which he was charged."*

(Emphasis added) 246 F.2d at 580.

The same approach has been expressed in somewhat different language in Cortez v. United States, supra:

"The important thing is not that there shall be no 'deal' or 'bargain', but that the plea shall be a genuine one, by a defendant who is guilty; * * *."

337 F.2d at 701.

And see Smith v. People, 428 P.2d 69 (Colo. 1967).

If it is "voluntariness" in any sense that is the test of the validity of a plea of guilty, then certainly we are to some extent evaluating the mental state of the accused. And in the train of thoughts of the accused, it seems most probable that volitional decisions in regard to pleading to a criminal charge are amalgamated with whatever concepts the accused may have as to his actual guilt or innocence. To insist upon separating out of this amalgam at a factual hearing only the strictly volitional thought processes is to overestimate the state of the art, both psychiatric and forensic.

■ Having taken the "high road," because we believe it to be in accord with the view of the United States Supreme Court, the final arbiter, we conclude that the petition for writ of habeas corpus filed in this court states sufficient facts to merit a factual hearing on the charge that the plea of guilty was "involuntary." Taking all of the factual allegations of this petition as true, we are of the opinion that this plea of guilty lacks that degree of reliability and trustworthiness demanded by due process. However, we are also convinced that the petition for habeas corpus filed in the superior court did not state sufficient facts to require a hearing.

■ *Pro se* petitions for habeas corpus relief should be liberally construed and read with a measure of tolerance, McKinney v. Taylor, 344 F.2d 854 (10th Cir. 1965); Smith v. Settle, 302 F.2d 142 (8th Cir. 1962); Sas v. State of Maryland, 334 F.2d 506 (4th Cir. 1964); Pike v. Dickson, 323 F.2d 856 (9th Cir. 1963), cert. den. 377 U.S. 908, 84 S.Ct. 1164, 12 L.Ed.2d 179 (1964). However, a petitioner is still required to allege *facts,* which if proved, would entitle him to relief. Collins v. Beto, 245 F.Supp. 639 (D.C., 1965); United States ex rel. Hawryliak v. Maroney, 235 F. Supp. 135 (1964); Adamson v. Nash, 218 F.Supp. 841 (D.C., 1963); Crescioni v. Settle, 202 F.Supp. 868 (D.C., 1962). Mere conclusional allegations, unsupported by facts, will not suffice to require a court to grant a hearing on the petition. Schlette v. People of State of California, 284 F.2d 827 (9th Cir. 1960), cert. den. 366 U.S. 940, 81 S.Ct. 1664, 6 L.Ed.2d 852 (1961); Grant v. State of Georgia, 358 F.2d 742 (5th Cir. 1966); Martinez v. United States, 344 F.2d 325 (10th Cir. 1965); Heisler v. United States, 321 F.2d 641 (9th Cir. 1963); see also Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

■ The petition for habeas corpus relief filed in superior court consists of an admixture of legal citations and quotations, legal argument, and a few facts, most of which are of a conclusional nature. Construing these allegations with as much liberality as is proper, and recognizing some degree of discretion in the trial court, Boies v. Dovico, 97 Ariz. 306, 400 P.2d 109 (1965), we cannot say that there was error in denying the petition filed below. It is our view that a habeas corpus petition should be devoted principally to a simple and intelligible statement of specific facts upon which the claim for relief is based, and that extensive legal citation is often of little help to the court. See Johnson v. Avery, 252 F.Supp. 783, 787 (1966).

Nor do we believe it proper that new factual allegations be made for the first time in this, an appellate court. The general law seems well established that a habeas corpus petitioner must first present his case to the trial court. 39 C.J.S. Habeas Corpus § 78, p. 623; 25 Am. Jur. Habeas Corpus § 109, p. 224; Ex parte Rodriguez, 169 Tex.Cr. 367, 334 S.W.2d 294 (1960); Commonwealth ex rel. Paylor v. Claudy, 366 Pa. 282, 77 A.2d 350 (1951); Rogers v. Best, 115 Colo. 245, 171 P.2d 769 (1946); cf. DuBoise v. State of North Carolina, 338 F.2d 697 (4th Cir. 1964).

This general law would appear to be intended for this State by Rule 1(b) (1), Rules of the Supreme Court, 17 A.R.S., which reads:

> "When an application is made to this court for a writ of mandamus, review, prohibition, habeas corpus, certiorari, or for any other prerogative writ, to be issued in the exercise of its original jurisdiction, and such application might have been lawfully made to a lower court in the first instance, the affidavit or petition, in addition to the matters required by law to support the application, shall also set forth the circumstances which in the opinion of the applicant render it proper that the writ should issue originally from this court and not from such lower court. If the court finds such circumstances insufficient, the court will on that ground refuse to order issuance of the writ."

Under this Rule, the petition to this court for writ of habeas corpus is denied. Because insufficient facts were alleged below, the order entered in the superior court in Pinal county denying the petition for habeas corpus is affirmed on certiorari, without prejudice to amend or refile. See Heisler v. United States, supra; Swepston v. United States, 227 F.Supp. 429 (1964); Hamby v. United States, 217 F. Supp. 318 (1963); Aiken v. United States, 282 F.2d 215 (4th Cir. 1960); Burleson v. United States, 205 F.Supp. 331 (1962), motion to vacate subsequently denied, 209 F. Supp. 464 (1962), when petitioner failed to amend. The writ of certiorari to the superior court in Maricopa county, having served its purpose in permitting us to look at the petition before us in the light of that record, is quashed.

HATHAWAY, C. J., and KRUCKER, J., concur.