431 P.2d 86

**Application of James Nelson PARHAM for a Writ of Habeas Corpus.**

**No. 2 CA–HC 62–2.**

Court of Appeals of Arizona.

Aug. 4, 1967.

Rehearing Denied Sept. 6, 1967.

Review Denied Oct. 24, 1967.

James Nelson Parham, in pro. per.

Darrell F. Smith, Atty. Gen., for respondent.

MOLLOY, Judge.

The petitioner has instituted habeas corpus proceedings in this court after an unsuccessful attempt to procure a writ in the superior court, Pinal county. The petition sets forth the factual circumstances preceding the petitioner's imprisonment in the Arizona State Prison where he is presently incarcerated.

The gravamen of petitioner's complaint concerns two different "deals" with officials of the government which he claims were not fulfilled. He first complains that he was promised immunity from all charges pending against him (1 count of burglary, first degree, and 7 counts of "insufficient fund checks") if he "cooperated" with the police by working with them to apprehend narcotics violators. According to him, a detective in the narcotics division made the following proposition:

> " ' * * * we got all those checks and burglary charges on you and we can make all charges stick, if we want to, and we will also see that you get a long sentence; now this is the proposition, we want you (petitioner) to work with us in setting up and apprehending K——. We will drop all charges against you and will not bother you again; you will be released ROR in order to work with us and you are to try and become the "carrier" for K—— * * *.' "

The detective is alleged to have further stated:

> " ' * * * * if you do not accept the proposition, you will go to State Prison for a long time.' "

The petitioner claims that he did not consent to the proposition until assured by his attorney that the "deal" was "bona fide." He was then released ROR by a superior court judge (which he interpreted as judicial sanction of the "deal") and worked with the detectives to secure information about narcotics violations. This "deal," however, was violated, according to the petitioner, in that, after he had performed valuable and dangerous undercover work, the burglary charge was filed against him and he was instructed to go to trial with his codefendant to "avoid suspicion" and to plead guilty at the close of the State's case. He asserts that the deputy county attorney, in the presence of the defendant's court-appointed lawyer, made a "guarantee" that the petitioner would " * * * get proba-

tion in exchange for the guilty plea." According to the petitioner, the petitioner's attorney assured him that the agreement of probation and to drop all other charges was in writing, signed by the deputy county attorney, was in the attorney's possession, and if the same was not carried out, the attorney would appeal " * * * all the way to the U. S. Supreme Court * * *."

Considering that the granting of writs of certiorari was more appropriate relief, see Application of Buccheri, 6 Ariz.App. 196, 431 P.2d 91 (1967) (released this date), this court issued a writ of certiorari both to the clerk of the superior court in Pinal county, to review the denial of the petition for writ of habeas corpus there, and to the clerk of the superior court in Pima county, to review the judgment of conviction and sentence there.

This court has previously affirmed on appeal the petitioner's conviction. State v. Parham, 4 Ariz.App. 450, 421 P.2d 346 (1966). Appellate counsel in that case, who was not defense counsel in the trial court, filed an affidavit with this court as to his examination of the entire record and his inability to find anything in the record upon which reversal could be predicated. This court undertook the duty imposed by A.R.S. § 13–1715 to examine the entire record for fundamental error and came to a like conclusion. Because of petitioner's claim of violation of his constitutional rights, we have undertaken to reexamine the record. This reexamination, we believe, is particularly appropriate in view of the since-rendered decision of Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

■ We address ourselves first to the question of whether the petitioner is entitled to the relief he seeks—specific performance of his "bargain" with the law-enforcement officers that if he would help in a criminal investigation, all charges, including the one for which he was sentenced, would be dropped. We hold that such promises, if made by police officers are unenforceable, as being beyond the scope of

authority of such officers. 21 Am.Jur.2d Criminal Law § 153, pp. 211–22; State v. Crow, 367 S.W.2d 601 (Mo.1963); State v. Ashby, 81 N.J.Super. 350, 195 A.2d 635 (1963).

■ As to the prosecuting attorney's making such promises, we hold that such would be unenforceable as being against public policy. While a prosecuting attorney has discretion in deciding whether to bring a criminal action (Taliaferro v. City of San Pablo, 187 Cal.App.2d 153, 9 Cal.Rptr. 445 (1960)), he has no authority to dismiss a pending criminal prosecution. He can only recommend dismissal to the court but actual dismissal is solely within the court's discretion. Rule 239, Rules of Criminal Procedure, 17 A.R.S.; see People v. Parks, 230 Cal.App.2d 805, 41 Cal.Rptr. 329 (1964).

■ It seems self-evident that it is not in the public interest for a prosecuting attorney to have unlimited authority to promise immunity from prosecution in exchange for promises from an accused. The general rule, which appeals to this court as being proper, holds that only when the promise to grant immunity is given in exchange for the promise to "turn state's evidence" is the agreement legal and enforceable. While a prosecuting attorney may have more apparent authority in this regard than police officers, his authority is limited:

"A bargain by a prosecuting officer with a person accused of crime to recommend to the court a nol. pros. in consideration of the accused becoming a witness for the State, is not illegal. But any other bargain to secure a nol. pros. or the recommendation of a nol. pros., except by the presentation of facts showing that the accused person is not guilty, is illegal.

*Comment:*

"*a.* * * * One may properly seek to induce a prosecuting officer to recommend a nol. pros. if one believes that is the most desirable disposition of a criminal charge; but one cannot make a binding agreement to do so. To give effect to such bargains would lead to

temptation to use improper influences." 2 Restatement, Contracts § 549, pp. 1054–55.

We hold, therefore, that if the prosecutor did agree to withdraw the burglary prosecution, as contended by the petitioner, such agreement was illegal, hence unenforceable.

We now come to the question of whether the assertion that there was a "guarantee" of probation by the county attorney in exchange for the plea of guilty to the burglary charge requires a factual hearing.

There is a diversity of authority as to whether such a promise, if made, affects the validity of the sentence. The following citations stand for the proposition that if such promises were made by the prosecuting attorney and were the inducement for the plea, then either the promised sentence should be imposed or the defendant given an opportunity to plead anew: Roberts v. People, 404 P.2d 848 (Colo.1965); Courtney v. State, Okl.Cr., 341 P.2d 610 (1959); United States v. Graham, 325 F.2d 922 (6th Cir. 1963); State v. Ward, 112 W.Va. 552, 165 S.E. 803, 85 A.L.R. 1175 (1932).

Apparently standing alone against this view, on the rock that prosecuting attorneys should not have control over sentences imposed by the court, are New Jersey courts: State v. Pometti, 23 N.J.Super. 516, 93 A.2d 409 (1952), aff'd 12 N.J. 446, 97 A.2d 399 (1953); State v. Miller, 16 N.J.Super. 251, 84 A.2d 459 (1951), cert. den. 342 U.S. 934, 72 S.Ct. 379, 96 L.Ed. 695 (1952).

But this Rubicon we are not required to cross. We do not believe that every time a petition is filed setting up factual grounds for the avoiding of a plea of guilty that a judicial hearing thereon must necessarily be held.

This court has already indicated its view that unless judicial decisions are to have some finality, there is little purpose in any judicial proceeding. Garrett v. Holmes Tuttle Broadway Ford, 5 Ariz.App. 388,

427 P.2d 369 (1965). We appreciate that the United States Supreme Court in its "triology" [1] of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), has almost completely extirpated the doctrine of res judicata from our criminal law:

> "Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged."

83 S.Ct. at 1073.

But, though these words are all-encompassing, we cannot believe that they were intended literally. The *Sanders* decision itself upholds, with certain limitations, that portion of 28 U.S.C.A. § 2255 (post-conviction motion statute), reading as follows:

> "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

*Sanders* limited the restriction of this section to petitions presenting requests for relief on "* * * the same ground * * *" (83 S.Ct. at 1077). However, the Court defined what it meant by these words:

> "By 'ground,' we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different 'ground' than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations."

83 S.Ct. at 1077.

---

1. Quote from dissenting opinion of Justice Harlan in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 1081, 10 L.Ed.2d 148 (1963).

Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), a landmark case in this area of "coerced" pleas, states:

"What has been said is not to imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."

82 S.Ct. at 514.

██ These words encourage us not to relegate to a limbo of inconsequentiality the proceedings before a trial court at the solemn moment of acceptance of plea and imposition of sentence. These are moments of truth for an accused, and years of experience in the trial court have indicated that they are so regarded. What is said and done at this time should be dignified by a measure of respect by reviewing courts for all time to come. If what is said and done at these times, when considered in the light of "grounds" subsequently stated for setting aside a plea, constitute a reliable testimonial to the accused's actual guilt, see Application of Buccheri, 6 Ariz.App. 196, 431 P.2d 91 (1967), this should suffice. If the record made in open court belies the allegations of a petition by the accused, the record, absent the most exceptional of circumstances, should prevail. This much we must insist upon if the judicial process in plea-taking is to have any dignity whatever.

However, we recognize that there will be petitions specifically stating facts *dehors* the record which will call into question in the mind of a reasonable man the reliability of what took place in open court. Examples of such verified allegations may be

found in such cases as: Machibroda v. United States, supra; Roberts v. People, supra; Ward v. Page, 238 F.Supp. 431 (D.C.1965); McClure v. Boles, 233 F.Supp. 928 (D.C.1964); Scott v. United States, 349 F.2d 641 (6th Cir. 1965); Palmer v. Cranor, 45 Wash.2d 278, 273 P.2d 985 (1954); Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942); United States v. Salerno, 290 F.2d 105 (2d Cir. 1961); Watson v. United States, 104 U.S. App.D.C. 321, 262 F.2d 33 (1958); Vicory v. Taylor, 338 F.2d 954 (10th Cir. 1964); United States v. Glass, 317 F.2d 200 (4th Cir. 1963); Teller v. United States, 263 F.2d 871 (6th Cir. 1959); Nichols v. United States, 310 F.2d 374 (5th Cir. 1962).

The writ of certiorari issued by this court to the Pima county superior court indicates that the petitioner pleaded guilty to the burglary charge after the State's case against him had already been presented to the jury. At the time of acceptance of plea, the following occurred:

"MR. BAILEY [petitioner's court-appointed counsel]: Your honor, at this time I believe that Mr. Parham wishes to change his plea and withdraw his plea of not guilty and enter a plea of guilty.

"THE COURT: Come forward, Mr. Parham.

"Is it your desire at this time to withdraw your plea of not guilty and enter a plea of guilty?

"MR. PARHAM: Yes, sir.

"THE COURT: The record may so show.

"MR. KASHMAN: Your Honor, excuse me. For the record, will the Court go through the question as to whether he's been promised anything or reason for his change, if he's aware of the consequences? I would appreciate that in the record.

"THE COURT: Yes. Mr. Parham, with respect to your decision to change your plea from not guilty to guilty at this time, have you been induced by any promises of lenience or special treatment

by the law enforcement agencies or the county attorney's office?

"MR. PARHAM: No, sir.

"THE COURT: And you are aware, are you not, that the crime with which you are charged—that is burglary, and the specific offense of burglary in the nighttime—is a very serious one, and will subject you to punishment or could subject you to punishment in the state penitentiary for a substantial term?

"MR. PARHAM: Yes.

"THE COURT: And knowing that, is it still your desire to change your plea from not guilty to guilty?

"MR. PARHAM: I do."

The petitioner was released on his own recognizance at that time; time for sentence was set for Auguse 31, 1965. On September 15, 1965, the time for sentence was continued until September 28, 1965. On September 28, 1965, we find the following in the minutes of the court:

"Defendant having failed to appear at the time and place set for sentencing,

"IT IS ORDERED that a bench warrant will issue for his immediate arrest to be brought into Court."

On May 10, 1966, time for sentence was set for May 13, 1966. At the sentencing hearing, the petitioner spoke at length in his own behalf about the "deals" he had made and the promise of probation he contended he had received. Inquiry was made by the court of the police officer whom petitioner stated was present when the promise of probation was made. He stated in open court that the defendant had been told that police officers would intercede in the petitioner's behalf in the matter of sentence but that the defendant had been given to understand that the matter of imposition of sentence was for the court and that no one had authority to bind the court in this regard. Defense counsel corroborated, in open court, these statements.

■ We believe ourselves justified in leaving this record as we find it. State v.

Murray, 101 Ariz. 469, 421 P.2d 317 (1966); State v. Fry, 95 Ariz. 68, 386 P.2d 794 (1963); Commonwealth ex rel. Kerekes v. Maroney, 423 Pa. 337, 223 A.2d 699 (1966); Barber v. Gladden, 220 F.Supp. 308 (1963), aff'd 327 F.2d 101 (9th Cir. 1963); State v. Webb, 400 S.W.2d 84 (Mo.1966); Putnam v. United States, 337 F.2d 313 (10th Cir. 1964).

The petition for writ of habeas corpus to this court is denied; the denial of the writ of habeas corpus by the Pinal county court is affirmed on certiorari; the judgment and conviction by the Pima county court is affirmed on certiorari.

HATHAWAY, C. J., and KRUCKER, J., concur.