457 P.2d 331

**STATE of Arizona, Appellee,**

v.

**Francis Hamilton GRISWOLD, Appellant.**

**No. 1717.**

Supreme Court of Arizona.

In Banc.

July 23, 1969.

Gary K. Nelson, Atty. Gen., by Norval C. Jesperson, Former Asst. Atty. Gen., Darrell F. Smith, Former Atty. Gen., Phoenix, for appellee.

Giles & Moore, by Charles M. Giles, and Barber & Haralson, by Dale Haralson, Tucson, for appellant.

STRUCKMEYER, Justice.

On the 4th of October, 1965, petitioner, herein, Francis Hamilton Griswold, killed his wife of over thirty years, Elsa Muriel Griswold. He was charged with murder in the first degree and on the 18th of March, 1966, entered a plea of guilty to the reduced charge of murder in the second degree. On March 30th, 1966, after a hearing in mitigation, he was sentenced to a term of imprisonment in the state prison of not less than thirty-six nor more than forty years. From the sentence and conviction he appealed. This court affirmed,

State v. Griswold, 101 Ariz. 577, 422 P.2d 693.

Two questions were presented for disposition on Griswold's appeal, the first being whether the Superior Court of Apache County had the necessary jurisdiction to hear and determine the case and the second, whether the sentence was excessive. No question was raised as to the constitutional adequacy of the procedures at the time the trial court accepted Griswold's plea of guilty to second degree murder. Nor were any questions raised as to the propriety of the court's denial of certain pre-trial motions such as for change of venue, for a trial continuance and for production of real evidence.

Thereafter, on April 8th, 1968, Griswold filed with this court a petition for writ of coram nobis. We directed that the writ issue, and ordered the Superior Court of Apache County to hold a hearing to determine two questions: One, whether Griswold fully understood his rights and the consequences of his plea of guilty at the time he entered it; and Two, whether Griswold voluntarily entered his plea of guilty to the crime of second degree murder.

A hearing was held in St. Johns, Arizona, on the 28th of May, 1968, the Honorable Porter Murry, Judge, presiding. Twenty-five findings of fact were returned to this court and both questions were answered adversely to Griswold. Judge Murry found that "The defendant, Francis Hamilton Griswold, fully understood his rights and the consequences of a plea of guilty at the time he entered his plea of guilty," and "The defendant, Francis Hamilton Griswold, voluntarily entered his plea of guilty to the crime of second degree murder."

At the time Griswold entered his plea of guilty, that is, in May of 1966, the Arizona Rules of Criminal Procedure provided only that a plea of guilty could not be accepted from a defendant who was not represented by counsel until the consequences of such plea were explained to him. Rule 182, Rules of Criminal Procedure. 17 A.R.S.

Federal Rule 11, Federal Rules of Criminal Procedure, did not provide until July 1st, 1966, that a plea of guilty could not be accepted from a defendant even though represented by counsel without "addressing the defendant personally" to determine whether he understood "the consequences of the plea." On June 2nd, 1969, the Supreme Court of the United States in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, where a defendant was represented by counsel in the Alabama Court, extended the procedural requirements of Federal Rule 11 to state courts holding:

"It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary." At 242, 89 S.Ct. at 1711, 23 L.Ed.2d at 279.

The trial judge in accepting Griswold's plea of guilty could not, of course, know that the only constitutionally permissible procedures were to be those which the United States Supreme Court had promulgated for use in criminal practice before the federal district courts. Neither was he endowed with the necessary precognition to anticipate that the statements of counsel made in the presence of the accused could not be relied upon as a true expression of his wishes.

The trial judge after granting the defense motion to withdraw the plea of not guilty to murder in the first degree, embarked upon these procedures:

"THE COURT: Stand up Mr. Griswold. (Defendant stood up) Francis Hamilton Griswold, to the charge of murder in the second degree, a felony, what is your plea?

"MR. GRISWOLD: Guilty.

"THE COURT: Let the record show the entry of his plea of guilty. Now, then, as I understand it, Mr. Powell, the plea just entered has been entered without any promises of any sort with regard to the penalty?

"MR. POWELL: That is right.

"THE COURT: And after you and Mr. Schuelke have advised the Defendant of the consequences of his plea?

"MR. POWELL: That is right, and we request a hearing on the matter before sentencing.

"MR. GREER: (The Prosecuting Attorney) May the record further show I was called in by Counsel and the Defendant and he repeated to me it was his will he enter this plea, and I did hear him say it at that time. * * *"

We do not view every procedural error as automatically giving rise to such prejudice that a reversal is required. Due process under the Constitution of the United States can sometimes be satisfied by returning to the trial court for the determination which procedurally should have been made at an earlier time. See e.g. Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908, 1 A.L.R.3rd 1205. Sometimes where constitutional rights have been found wanting the holdings have been made prospective only. See Johnson v. New Jersey, 384 U.S. 719, 16 L.Ed.2d 882, 86 S.Ct. 1772. In this court's decision in Application of Billie, 103 Ariz. 16, 436 P. 2d 130, we examined into the retroactivity of the Supreme Court's holding in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed. 2d 527, and decided that we would give it prospective application only. We hold that we will apply the decision in Boykin v. Alabama, supra, prospectively and that consequently Griswold is not automatically entitled to a reversal of his conviction. We also hold that in circumstances such as these, where in an excess of caution after an appeal, we choose to inquire into the plea of guilty we will not reverse if the facts upon which the plea rests can be determined favorably to the state at an appropriate hearing.

The evidence at the coram nobis hearing sustains the conclusion of Judge Murry that Griswold fully understood his rights and the consequences of the plea of guilty. Griswold testified:

"Q At the time you were considering the change of plea and at the time you went into court and actually changed your plea, what was your thought on the amount of time you might have to serve in the Arizona State Prison?

"A Well, it could have been ten years to life."

This is the statutory punishment for second degree murder. His attorney, Edwin R. Powell, testified that he read the statute of second degree murder to Griswold and told him that the judge would not commit himself as to what sentence would be imposed. A.R.S. § 13–453. The record of his arraignment on the second degree murder charge establishes that both counsel had advised Griswold of the consequences of his plea. We think it is conclusively established that Griswold intelligently entered his plea of guilty to second degree murder.

The second question which this court requested the Superior Court to examine into was the voluntariness of the plea of guilty. Griswold relies upon many compulsive circumstances as grounds for his claim of involuntariness but we are principally concerned with the averments in his petition for a writ of coram nobis that he was coerced into a plea of guilty because his attorneys demanded more money for the trial. It was alleged:

"Approximately four (4) days before the date set for the trial, defense counsel visited Appellant-Petitioner in St. Johns, Arizona, and informed him that they required additional attorneys' fees in a substantial amount to represent him at the trial. Because of civil actions which had been initiated at that time, Appellant-Petitioner was reasonably certain that he did not have the ability to acquire the funds necessary to satisfy the requests of defense counsel.

"At this same time, he was informed by defense counsel that the State had offered to allow him to plead guilty to the

**4**

crime of second degree murder. This possibility was discussed at the time, but no decision was reached. During the remainder of the day, Appellant-Petitioner contemplated the situation and, on the following day, indicated that he would be willing to enter a plea of guilty to second degree murder. He made this decisions not because he was guilty of the crime to which he agreed to enter the plea, but because he did not have the money available to satisfy his attorneys, because he felt under the circumstances his attorneys were not prepared to defend his case at trial * * *."

On direct examination by his present counsel at the coram nobis hearing Griswold testified:

"You have indicated that Mr. Powell told you that he wanted an additional $5,000.00.

"A   That is right.

"Q   Did you, after he made that statement, at any time attempt to get an additional $5,000.00 to him?

"A   Yes, I did.

"Q.   You did that by way of check?

"A   By way of check.

Later, on cross-examination he testified:

"Q   I believe you also stated, Mr. Griswold, a few moments ago one of the reasons you decided to plead guilty to second degree murder was your lack of funds, is that correct?

"A   That is correct.

"Q   Did you also testify in response to a request by Mr. Powell, one of your attorneys, for additional fees you wrote him out a check for an additional $5,000?

"A   *He was satisfied with it, except he couldn't cash my check after I gave it to him. My funds had been tied up.*

"Q   And I think you said your attorneys demanded additional funds before they would proceed with the trial, is that right?

"A   That is correct." [Emphasis supplied]

It is apparent from the comparison of the averments in Griswold's petition and his testimony that the testimony falls far short of supporting the averments. Griswold and his wife had accumulated a community estate of in excess of $200,000.00. (County Attorney's statement of facts on conviction.) There is no testimony whatsoever that his counsel refused to defend him at the trial after receipt of the check. It is clear that counsel did request an additional attorneys' fee and that he gave a check in payment of the amount requested. The answer that "He was satisfied with it, except he couldn't cash my check after I gave it to him" has an element of uncertainty, but we take it that the word "except" was used in its usual sense of a conjunction, meaning "however". Otherwise, Powell would not have been satisfied with the fee arrangement and would have informed Griswold that he could not continue in the defense of the case.

Griswold sets forth other grounds in support of his claim for an involuntary plea. These principally relate to the denial of certain preliminary motions prior to trial. We would not ordinarily consider these matters as they are present on the face of the record. If the trial court's rulings were erroneous, they could and properly should have been assigned as grounds on direct appeal. However, since Griswold relies on all of the accumulated circumstances to establish coercion, we briefly examine into them not for the purpose of determining the correctness of the lower court's ruling, but to show the cumulative effect in the light of the actual facts as they existed at the time of the plea.

Griswold complains: *First*, that there were some seventy witnesses against him, none of whom he was able to talk to because he was confined in the county jail and it was difficult for his lawyers to interview the witnesses because of the distances involved and the terrain on the Navajo Reservation. However, as a minimum, it should be noted that the county attorney filed an amended list of only twenty-eight names ten days before the trial

and Griswold knew this because he was present at the argument on his motion for continuance. Further, there had been a two day preliminary hearing at which some of the most important witnesses must have been present and testified. Moreover, and this should be pointed out in legal justification of the trial judge's denial of the motion for continuance, nearly five months intervened between the preliminary hearing and the date set for trial.

*Second,* that the court denied in part Griswold's motion to produce. The example Griswold pointed to was his wife's shoes which he stated were needed to determine her height. We deem that this hardly requires serious comment. There must have been other ways to establish the height of his wife of thirty-two years if this was a necessary element to a successful defense.

*Third,* that it was his thought that the amount of time he would have to serve in the Arizona State Prison would be from ten years to life. Griswold did not get the minimum sentence of ten years which he hoped he would get. But this could, of course, have no bearing on whether his plea prior to sentencing was voluntary. We note that he also testified "I thought anything would be preferable to the death penalty."

*Fourth,* that he was concerned about the denial of his motion for change of venue. He testified he was a stranger in the community of St. Johns and that it was brought to his attention by his lawyers that Indian Traders were not held in very high esteem.

*Fifth,* and finally that he had heart trouble, stomach ulcers and kidney trouble and that his health was deteriorating quite rapidly while in jail. As to this and the fourth item, we assume that they could very well have been some concern to one in Griswold's position.

We think in summation of Griswold's case, other than his fee arrangement with Powell, that the asserted coercive influences are those which occur repeatedly in case after case. There must always be reasons why a defendant chooses to plead guilty. But this does not mean that because there are reasons, the choice made is to be considered involuntary within legal contemplation. Every person is daily, perhaps almost momentarily, required to choose between different courses of action. Some choices are made from very compelling circumstances which may in fact in the end give no reasonable alternative. But if they are freely made, that is, not under physical duress, and with full knowledge of the consequences, then it must be said that the choice is voluntarily made. As Griswold testified, "I thought anything would be preferable to the death penalty."

We note one further matter before we conclude. Powell was asked in the coram nobis hearing what he told Griswold prior to the plea of guilty to second degree murder. Powell claimed a privileged communication and Griswold's present counsel argued that the attorney-client privilege could not be waived. It should be pointed out that this is a privilege personal to the client and obviously can be waived. Moreover, when an attorney's representation is under attack by his former client, there is an obligation to disclose fully and freely in order to protect the due administration of justice. State v. Kruchten, 101 Ariz. 186, 417 P.2d 510.

Writ of coram nobis ordered quashed and judgment of conviction affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and HAYS, J., concur.

McFARLAND, Justice (dissenting).

Francis H. Griswold (hereinafter referred to as defendant) was charged with the murder in the first degree of his wife. Originally he pleaded "not guilty," but subsequently he changed his plea to "guilty of murder in the second degree," and, after a hearing in mitigation, he was sentenced to a term in the State Penitentiary for not less than thirty-six nor more than forty years. He appealed to this Court, raising therein only the questions of the jurisdic-

tion of the trial court and excessiveness of this sentence. We affirmed his conviction. State v. Griswold, 101 Ariz. 577, 422 P.2d 693. This Court then granted defendant's petition for a Writ of Coram Nobis, and ordered that it be referred to the Superior Court of Apache County for a determination of facts on the following issues:

"(1) Did defendant fully understand his rights and the consequences of the plea of guilty, at the time he entered the plea of guilty? (2) Did Defendant voluntarily enter a plea of guilty to the crime charged?"

The pertinent grounds set forth by defendant as a basis for finding that the change of plea was involuntary were as follows:

"(1) At his arraignment, petitioner entered a plea of not guilty. Shortly thereafter, petitioner was shown the list of witnesses endorsed by the State and believed this list contained the names of approximately seventy witnesses. Petitioner never had an opportunity to talk with any of the witnesses because of his incarceration.

"(2) Of the seventy-plus witnesses listed, approximately sixty of them resided on the Navajo Reservation, and for this reason said witnesses were quite difficult to locate and talk with. Petitioner was aware that weather and road conditions, the remoteness of the area, the distance his attorneys had to travel, and the problems of obtaining an interpreter would cause great difficulty in interviewing the Navajo witnesses.

"(3) Petitioner was informed by his attorneys that they were having a difficult time locating and talking with the Navajo witnesses. This problem of interviewing witnesses was one of the reasons petitioner eventually decided to change his plea.

"(4) Petitioner was aware that motions for change of venue, to produce, and for a continuance were made by defense counsel.

"(5) Petitioner knew that the motion to produce was granted in part and denied in part. The partial denial of the motion was one of the factors which eventually caused petitioner to change his plea.

"(6) Petitioner was aware that his motion for change of venue was denied. Petitioner personally felt he could not receive a fair trial in Apache County and additionally heard his attorney indicate this in court. The outcome of the motion for change of venue weighed on petitioner's decision to change his plea.

"(6) (a) Had a trial outside Apache County been possible, he would not have changed his plea.

"(7) Petitioner was also aware that approximately one week before his trial was scheduled a motion for continuance was heard and denied. Petitioner was aware and believed that the continuance was important because his attorneys had stated to him that they needed time to examine the evidence they had not yet seen; they needed time to contact witnesses; they needed time to go over the legal aspects of the case; and they just did not have time to prepare the case. The denial of the motion for continuance also weighed on petitioner's decision to change his plea.

"(8) Before the various motions were heard and the statements made by defense counsel in the presence of the Defendant, he had never considered pleading guilty to a reduced charge.

"(9) At the time the possibility of a plea to a reduced charge was presented to petitioner, a request was made by defense counsel for additional fees, and petitioner believed that his funds were tied up by various legal actions.

"(10) Petitioner was never informed that, in the discretion of the Court, he could withdraw his plea of guilty before sentencing.

"(11) Had Judge Shelley inquired of the petitioner why he was entering a plea of guilty to the charge of second-degree murder, his answer would have been the difficulty his attorneys were having in talking with witnesses, the fact that defense counsel were not able to see and evaluate part of the evidence, the fact that

the continuance was denied, that the trial was to occur in Apache County, the lack of funds with which to compensate counsel, and the availability of the death penalty."

It is significant that these contentions were uncontroverted at the coram nobis hearing. The Superior Court of Apache County, Honorable Porter Murry presiding, held a hearing on May 28, 1968, and, in compliance with the order of this Court, made findings of fact, as follows, and returned them to this Court for final determination.

## "FINDINGS OF FACT

"1. That FRANCIS HAMILTON GRISWOLD knew that the State had submitted a list of witnesses, naming approximately seventy (70) witnesses, and that he viewed said list.

"2. That Mr. GRISWOLD was aware that his attorneys made motions to produce, a motion for change of venue, and a motion for continuance.

"3. That Mr. GRISWOLD was present in Court when all three motions were argued to the Court and decided by the Court.

"4. That Mr. GRISWOLD was aware of the fact that the motion to produce was granted in part and denied in part.

"5. That Mr. GRISWOLD felt that some of the items which the State was not ordered to produce were important to his defense.

"6. That the partial denial of the motion to produce was one of the reasons Mr. GRISWOLD agreed to enter a plea of guilty to the charge of second degree murder.

"7. That Mr. GRISWOLD was aware that his motion for change of venue was denied.

"8. That Mr. GRISWOLD believed he was not a popular person in Apache County but rather was considered to be an outsider and an itinerant Indian trader.

"9. That Mr. GRISWOLD was aware of the fact that his motion for continuance was denied.

"10. That Mr. GRISWOLD was aware that the State's list of proposed witnesses was reduced from approximately seventy (70) witnesses to twenty-eight (28) witnesses, and that this occurred approximately ten (10) days before the date set for trial.

"11. That Mr. GRISWOLD was aware of the fact that his motion for continuance was denied about one week before the trial was to occur.

"12. That Mr. GRISWOLD heard his attorneys state and he believed that they were not prepared to defend him and could not be by the time of trial.

"13. That one of the reasons Mr. GRISWOLD agreed to enter his plea of guilty to second degree murder was the denial of his motion for continuance.

"14. That Mr. GRISWOLD knew and was aware as a result of his four (4) years residence on the Navajo Indian Reservation that his attorneys had had and would have a difficult time interviewing witnesses who lived on the Navajo Indian Reservation.

"15. That Mr. GRISWOLD had a cardiac condition, ulcers, and was hard of hearing during the pendency of his case, and that his health deteriorated during the time he was in jail.

"16. That before the motion to produce was denied in part and the motion for change of venue and motion for continuance were denied, Mr. GRISWOLD did not consider the possibility of pleading guilty to a reduced charge.

"17. That Mr. GRISWOLD felt at the time he entered his plea of guilty to second degree murder that under the circumstances any disposition would be preferable to the death penalty.

"18. That Mr. GRISWOLD has had no training in the law.

"19. That shortly before his trial was to occur, Mr. GRISWOLD was asked for

**8**

additional attorneys' fees by his attorney, Edwin Powell.

"20. That before, after, and during the hearing on the change of plea, the only inquiry directed to Mr. GRISWOLD was his plea to the charge of second degree murder.

"21. That when Mr. GRISWOLD changed his plea from not guilty of first degree murder to guilty of second degree murder, the Court inquired as to whether or not defense counsel had advised Mr. GRISWOLD of the consequences of such a plea, and that the response of said attorneys was in the affirmative.

"22. Prior to pleading guilty to the amended charge of second degree murder, petitioner either read himself or his counsel read to him the punishment provision of A.R.S. § 13–453. Petitioner's counsel explained that section to him.

"23. Petitioner is a fairly well educated person having by his own testimony the equivalent of a college degree in engineering.

"24. No promises with regard to punishment, leniency, or possible probation were made or conveyed to the petitioner by the Court, by the County Attorney, or by his counsel.

"25. Petitioner testified that he knew he had a right to a jury trial on the issue of his guilt or innocence."

From the above findings, the court then concluded that the defendant fully understood his rights, and the consequences of a plea of guilty at the time he entered his plea of guilty; and that he voluntarily entered his plea of guilty to the crime of second-degree murder.

At the arraignment of the defendant on his plea of guilty to the lesser charge, all of the court's questions except one were directed to counsel. The pertinent part of those proceedings were as follows:

"THE COURT: The Motion of the defense to withdraw their plea of not guilty and enter a plea of guilty to the reduced charge of second degree murder, a felony, being made without objection on the part of the State, is granted.

"MR. POWELL: We stand ready for arraignment.

"THE COURT: Stand up Mr. Griswold. (Defendant stoood up) Francis Hamilton Griswold, to the charge of murder in the second degree, a felony, what is your plea?

"MR. GRISWOLD: Guilty.

"THE COURT: Let the record show the entry of his plea of guilty. Now, then, as I understand it, Mr. Powell, the plea just entered has been entered without any promises of any sort with regard to the penalty?

"MR. POWELL: That is right.

"THE COURT: And after you and Mr. Schuelke have advised the Defendant of the consequences of his plea?

"MR. POWELL: That is right, and we request a hearing on this matter before sentence.

"MR. GREER: May the record further show I was called in by Counsel and the Defendant and he repeated to me it was his will he enter this plea, and I did hear him say it at that time. In view, your Honor, of the Defendant's plea to the charge of second degree murder, I would move to strike from the Information the words 'and premeditated', it being our intention to reduce the Information to charge the offense of murder in the second degree.

"MR. POWELL: No objection.

"THE COURT: The motion to strike is granted, and the words 'and premeditated' are stricken from the Information."

Referring to the above proceedings counsel for defendant alleges that:

"Had Judge Shelley inquired of the petitioner why he was entering a plea of guilty to the charge of second degree murder, his answer would have been the difficulty his attorneys were having in talking with witnesses, the fact that defense counsel were not able to see and evaluate part of the evidence, the fact

that the continuance was denied, that the trial was to occur in Apache County, the lack of funds with which to compensate counsel, and the availability of the death penalty."

The uncontradicted testimony of defendant at the coram nobis hearing supports this contention that he would have so answered. We cannot presume from this record that because defendant remained silent when the questions were being asked his attorney that he would not have answered as he did at the coram nobis hearing. In the case of Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70, the United States Supreme Court, in passing upon the question of a waiver of a right to counsel by defendant, stated:

"* * * In the present case, however, there was no guilty plea, and the return to the writ does not allege an affirmative waiver. Therefore, there is no disputed fact question requiring a hearing. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

The change of the plea of defendant from "not guilty" of first-degree murder to "guilty of second degree murder" was done under what is generally termed as "plea bargaining." In State v. Jennings, 104 Ariz. 3, 448 P.2d 59, we recognized the danger to the rights of a defendant in "plea bargaining"; however, we approved plea bargaining where a proper determination is made by the court that the plea was made voluntarily at the time the plea was changed. We stated:

"While 'plea bargaining' is recognized, a guilty plea procured by 'fraud or duress' is ground for setting aside a judgment on the plea of guilty. State v. Murray, 101 Ariz. 469, 421 P.2d 317; and Silver v. State, 37 Ariz. 418, 423, 295 P. 311. Pleading guilty is the same as if defendant had been tried before a jury and

been found guilty. State v. Alford, 98 Ariz. 249, 403 P.2d 806; State v. Anderson, 96 Ariz. 123, 392 P.2d 784; and State v. Fry, 95 Ariz. 68, 386 P.2d 794. Thus, once the plea is made the court has only to determine whether the plea is voluntary. Benton v. United States, 9th Cir., 352 F.2d 59. It is well understood that any plea which is involuntary is of course void.

"The courts are careful to see that the plea of guilty is made voluntarily, after proper advice and explanation *by the court* with a full understanding of its consequences. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Scott v. United States, 6th Cir., 349 F.2d 641, 643; and Application of Buccheri, 6 Ariz.App. 196, 431 P.2d 91. The question, then, in the instant case, is whether defendant was properly advised of his rights by counsel *and by the court* and whether there was a proper understanding by defendant of what could happen as a result of his guilty plea.

"In determining this we must look at the record. * * * " [Emphasis added.]

Since our decision in Jennings, the United States Supreme Court, in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, interpreted Rule 11, as amended, of the Federal Rules of Crim. Proc. which involves the procedure to be followed by a federal district court prior to accepting a plea of guilty.

In Jennings, practically the same requirements are set forth for determination of the voluntariness of a plea of guilty where there is plea bargaining as is set forth under the Federal Rule 11, as amended. In so holding we followed a line of federal cases. See e.g., Fultz v. United States, 365 F.2d 404 (6th Cir.); United States v. Diggs, 304 F.2d 929 (6th Cir.); Domenica v. United States, 292 F.2d 483 (1st Cir.); Gundlach v. United States, 262 F.2d 72 (4th Cir.); Julian v. United States, 236 F.2d 155 (6th Cir.). Therefore, the holding in McCarthy is valuable

in making a determination as to the voluntariness of the plea in the instant case. The Court said:

"Rule 11 expressly directs the district judge to inquire whether a defendant who pleads guilty understands the nature of the charge against him and whether he is aware of the consequences of his plea. * * *

* * * * * *

"These two purposes have their genesis in the nature of a guilty plea. A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

"Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea. The judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'

* * * * * *

"We thus conclude that prejudice inheres in a failure to comply with Rule 11, for noncompliance deprives the defendant of the Rule's procedural safeguards, which are designed to facilitate a more accurate determination of the voluntariness of his plea. Our holding that a defendant whose plea has been accepted in violation of Rule 11 should be afforded the opportunity to plead anew not only will insure that every accused is afforded those procedural safeguards, but also will help reduce the great waste of judicial resources required to process the frivolous attacks on guilty plea convictions that are encouraged, and are more difficult to dispose of, when the original record is inadequate. It is, therefore, not too much to require that, before sentencing defendants to years of imprisonment, district judges take the few minutes necessary to inform them of their rights and to determine whether they understand the action they are taking."

McCarthy applied only to the federal judicial system under Federal Rule 11. But, in the recent case of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (June 2, 1969), the United States Supreme Court has applied the principles expressed in McCarthy, and the safeguards heretofore set forth by this Court in Jennings, to state judicial systems, not as a mere procedural requirement but as a Constitutional necessity. The Court there said:

"* * * It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. That error, under Alabama procedure, was properly before the court below and considered explicitly by a majority of the justices and is properly before us on review.

"A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment

and determine punishment. See Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009. Admissibility of a confession must be based on a 'reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant.' Jackson v. Denno, 378 U.S. 368, 387, 84 S.Ct. 1774, 12 L.Ed.2d 908. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: 'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.'

"We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. Douglas v. Alabama, 380 U.S. 415, 422, 85 S.Ct. 1074, 13 L.Ed.2d 934.

"Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653. Second is the right to trial by jury. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491. Third, is the right to confront one's accusers. Pointer v. Texas, 380 U.S. 400,

85 S.Ct. 1065, 13 L.Ed.2d 923. We cannot presume a waiver of these three important federal rights from a silent record.

"What is at stake for an accused facing death or imprisonment demands utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may be later sought. (Garner v. Louisiana, 368 U.S. 157, 173, 82 S.Ct. 248, 7 L.Ed.2d 207; Specht v. Patterson, 386 U.S. 605, 610, 87 S.Ct. 1209, 18 L.Ed.2d 326), and forestalls the spin-off of collateral proceedings that seek to probe murky memories. "The three dissenting justices in the Alabama Supreme Court stated the law accurately when they concluded that there was reversible error 'because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty.' 281 Ala. 659, at 663, 207 So.2d 412, at 415.

Reversed."

I am of the opinion that Boykin sets to rest any lingering doubts that the conviction in the instant case must be reversed and remanded since the record, even as supplemented by the coram nobis hearing, is silent as to the defendant's waiver of the federal rights therein mentioned.

In Jennings, McCarthy, and Boykin, it is mandatory that the court, in addition to its discussion with counsel, address its inquiry to defendant personally. The Jennings case set forth safeguards necessary to be followed for the protection of a defendant's rights. In Julian v. United States, supra, which preceded McCarthy and Jennings, the court indicated that the inquiry does not have to follow any ritual in order to insure voluntariness of a plea:

"* * * A plea of guilty, unlike a mere admission or extrajudicial confession, admits every material fact charged and should not be accepted by the court

unless made voluntarily after proper advice by counsel and with full understanding of the consequences. Johnson v. Commonwealth, 254 Ky. 775, 777, 72 S. W.2d 472. In order to comply with the rule the District Court need not follow any particular ritual. The prerequisite is that the defendant understands the consequences of the plea, United States v. Swaggerty, 7 Cir., 218 F.2d 875. A brief discussion with the defendant regarding the nature of the charges may normally be the simplest and most direct means of ascertaining the state of his knowledge. United States v. Davis, 7 Cir., 212 F.2d 264. * * *"

It is apparent that at defendant's arraignment the safeguards outlined in Jennings, McCarthy and Boykin were not utilized for the protection of the accused, and, as I read the record, the defect was not cured by the hearing on the writ. The record shows several reasons why defendant changed his plea to guilty of second-degree murder. Among them was the fact that the continuance of his case had not been granted, and that his lawyers had informed him they were not prepared, and he had heard them state in court that they could not be prepared by the date set; also a denial by the court of the motion to produce certain evidence which he had heard his counsel state in open court were important to his defense. He likewise gave as one of his reasons to change his plea the failure of the court to grant the motion for change of venue because he was of the opinion that he could not get a fair and impartial trial in Apache County.

More important, the record does not show that it was explained to defendant, or that defendant understood, that he was waiving the right to an appeal on these grounds if he changed his plea to guilty. The majority indicate that if the court erred in its rulings on the motions the defendant could have alleged such on his direct appeal. He could not, since by his plea of guilty he waived any such right. State v. Sparks, 97 Ariz. 358, 400 P.2d 586; In re Harrison, 55 Ariz. 347, 101 P.

2d 457; Alaway v. United States, 280 F. Supp. 326 (C.D.Cal.). He also stated that one of his grounds was that his attorneys were demanding more money, and his funds were tied up. The statement of the county attorney, referred to in the majority opinion, that defendant and his wife had accumulated an estate in excess of $200,000 is immaterial, since the record is clear that the check he gave to his counsel was not honored because all his funds were tied up. For this reason he was unable to comply with their request. It was not explained to him that if he did not have sufficient funds to employ an attorney it would be the duty of the court to appoint an attorney for him.

All of these are matters which undoubtedly could have been avoided by following the safeguards set forth in Jennings. Nowhere in the entire record is there a clear showing that the defendant was advised of, and intelligently waived, his privilege against compulsory self-incrimination and his rights to trial by jury, to confront his accusers, to have assigned counsel and to appeal from the rulings of the court. Had the trial judge explained the waiver of rights and made proper inquiry of the defendant he would have learned of the defendant's reasons for the plea. The court then could have sought to clear away defendant's problems or could have taken other procedures consistent with the circumstances developed by the inquiry. At the very least the court would have had spread on the record the necessary facts concerning the voluntariness of the plea thereby avoiding the necessity of a coram nobis hearing. Therefore, by virtue of the findings of the court on coram nobis, and under the entire record as set forth herein, I cannot agree with the conclusions reached by the trial court. On the contrary, under the safeguards we set forth in Jennings, necessary for a court to follow to protect a defendant's rights in plea bargaining cases, and, as set forth in McCarthy and Boykin, I am unable to say the record justifies a finding or conclusion that the plea was voluntary.

In fact, three of the court's findings in particular justify the contrary conclusion:

"6. That the partial denial of the motion to produce was one of the reasons Mr. GRISWOLD agreed to enter a plea of guilty to the charge of second degree murder.

\* \* \* \* \* \*

"13. That one of the reasons Mr. GRISWOLD agreed to enter his plea of guilty to second degree murder was the denial of his motion for continuance.

\* \* \* \* \* \*

"16. That before the motion to produce was denied in part and the motion for change of venue and motion for continuance were denied, Mr. GRISWOLD did not consider the possibility of pleading guilty to a reduced charge."

I want to state distinctly that I am not questioning the correctness of the rulings on the matters before arraignment. There are insufficient facts before this Court to pass upon them.

The majority states that Boykin is prospective only, and that the issues were determined by the coram nobis proceedings. Assuming Boykin is prospective only, it is not decisive of the question of the voluntariness of the plea. The record indicates that had the defendant been plainly advised of his rights and been made aware that, by his action, he was waiving vital Constitutional privileges, according to defendant's present answers, he would have refused to enter the plea of guilty. Justice requires that since he was not so advised at the time of the plea, he should now have the opportunity to present his case to the jury if he so desires.

I am convinced that the record as it existed prior to the coram nobis hearing would have required the granting of a trial. I am equally convinced that nothing was developed on the coram nobis hearing which would justify a conclusion that the defendant's Constitutional rights were adequately safeguarded.

Therefore, I am of the opinion that justice would be better served to permit the defendant to withdraw his plea.