492 P.2d 440

The STATE of Arizona, Appellee,

v.

Pedro Mauricio MORENO, Jr., Appellant.

No. I CA–CR 377.

Court of Appeals of Arizona, Division 1.

Jan. 10, 1972.

———◆———

Gary K. Nelson, Atty. Gen., by Albert M. Coury, Asst. Atty. Gen., Phoenix, for appellee.

J. Douglas McVay, Phoenix, for appellant.

KRUCKER, Chief Judge.

This appeal is from the final judgment and sentence entered October 26, 1970, by the Honorable Roger G. Strand, Judge of the Superior Court of Maricopa County.

Appellant was originally charged with the crime of grand theft. An amended complaint was filed charging appellant with attempted grand theft. The appellant thereafter entered a plea of guilty to the amended information and was sentenced to a term of not less than two nor more than four years.

The only issue raised on appeal is whether the court followed the requirements of Boykin v. Alabama, *infra,* in accepting appellant's plea.

■ In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that requirements of Rule 11, Federal Rules of Criminal Procedure, 18 U.S.C.A., were applicable to the states as a matter of constitutional due process. State v. Laurino, 106 Ariz. 586, 480 P.2d 342 (1971).[1] The Arizona Supreme Court in State v. Griswold, 105 Ariz. 1, 457 P.2d 331 (1969) gave *Boykin* prospective application only.

■ Rule 11, Federal Rules of Criminal Procedure, in its pertinent part reads:

"The court . . . shall not accept such plea [of guilty] . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. * * * The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

*Boykin* requires, pursuant to Rule 11, "an affirmative showing that it [the plea] was intelligent and voluntary." The purpose of the rule is to produce a complete record at the time of the plea of the factors relevant to this voluntariness determination.

Our Court of Appeals, Division One, in State v. Sutherland, 14 Ariz.App. 344, 483 P.2d 576 (1971), analyzed Rule 11 as follows:

"On a plea of guilty, the rule requires:

1.  That the court must address the defendant personally.

2.  That the court must determine that the plea of guilty:

    a.  is made voluntarily;

    b.  is made with an understanding of the nature of the charge; and

    c.  is made with the understanding of the nature of the consequences of the plea.

3.  That before a judgment of guilty can be entered on a plea of guilty the trial court must be satisfied that there is a factual basis for the plea."

Counsel for appellant contends that the court failed to comply with the *Boykin* mandate in two respects: (1) it failed to explain the legal elements of the crime to the accused, and (2) the court had no facts

---

1. The State courts are not required to follow "the letter" of Federal Rule 11, but only its spirit. State v. Williker,

107 Ariz. 611, 491 P.2d 465 (No. 2156, filed December 7, 1971).

before it from which it could satisfy itself that there was a "factual basis" for the plea.

■ The courts of this State have already rejected the first contention and decided that Rule 11 of the Federal Rules of Criminal Procedure does not require that the elements of the crime be explained to the defendant. State v. McCallister, 107 Ariz. 143, 483 P.2d 558 (1971); State v. Brown, 15 Ariz.App. 48, 485 P.2d 872 (1971); State v. Jackson, 14 Ariz.App. 591, 485 P.2d 580 (1971). Rule 11 only requires that the defendant understand the nature of the charge and that the court satisfy itself of the "factual basis" for the plea before entering judgment thereon.

■ Appellant's argument seems to equate the court's satisfaction of a "factual basis" with satisfaction of the defendant's guilt. This requirement can be met even though the defendant might deny his guilt, as the United States Supreme Court concluded in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970):

> "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 91 S.Ct. at 167.

As this court said previously in *Sutherland,* supra, the magic words "the court is satisfied that there is a factual basis for the plea" might be desirable but are not absolutely required. We believe that upon review of all the facts and the records available to the court, the trial court was able to satisfy itself that there was a "factual basis" for defendant's plea before entering judgment thereon.

Our review of the record indicates that appellant appeared before the court as a co-defendant with his brother, Frank Moreno. The transcript indicates that the court first addressed Frank Moreno and explained his rights to remain silent, to

have a jury trial and to confront and cross-examine his accusers. It was explained that the amended information charged both defendants with attempted grand theft. The court inquired if Frank Moreno knew the consequences of his guilty plea and the possible penalty and an affirmative answer was given. The court then asked Frank Moreno to state briefly the circumstances which led to the filing of these charges. Following his statement, the court asked him if he wished to enter a plea to the charge, attempted grand theft. Frank Moreno then entered his plea of guilty.

The court then turned to appellant Pedro Moreno to review the same matters just reviewed with his co-defendant. The court informed appellant of his rights to a jury trial, to remain silent, to confront his accusers and to have them cross-examined by his attorney. Appellant answered that he understood his rights and the possible penalty should he enter a plea of guilty to the charge. Appellant was then asked to state the circumstances which led to the filing of these charges. Appellant said it was as his brother, Frank, had stated it except that he (Pedro) had no intention of removing the machine and had not known that Frank and Jerry Freeman were going to do so. Appellant said he came out of the restroom to see them carrying the machine toward the door and when the manager saw them appellant "got scared and ran." When questioned further by the court, appellant suggested again that he had no intent, did not know they planned to take it, was not "around it" when they started to move it, and fled when the manager saw them.

The court then asked appellant if he wished to enter a plea to the charge of attempted grand theft. Appellant answered yes, that he wished to plead guilty. The court then accepted appellant's plea as knowingly and voluntarily entered.

We believe that the appellant here could have intelligently concluded, as did the defendant in North Carolina v. Alford, su-

pra, that a guilty plea was in his best interests despite his protestation of innocence.

Viewed in light of the evidence against him and his representation by competent counsel, the validity of his guilty plea cannot be seriously questioned. At the preliminary hearing, Jerry Eugene Smithers, the night man at the Seventh Avenue Hotel, testified as follows:

"Q On July 30th, 1970, during the early morning hours, did you [Smithers] have occasion to make a routine check of the grounds adjacent to the hotel?

A Yes.

Q During this check did you find anything which you considered unusual?

A Well, I left the hotel and started up Washington. The annex—there is no door and I had to go up the street. I seen [sic] three men moving a cigarette machine up the street.

Q Did you recognize that cigarette machine?

A First off, no.

Q What did you do when you saw the three men carrying the machine?

A Well, it puzzled me then. I had a message for the man that is not here, Jerry Freeman. A person came down looking for him and I gave him the message and stood with the three men. Then I looked to the parking lot and noticed a car with the motor running and the door open.

All the time it seemed kind of funny that someone was moving the cigarette machine at that time of night. So I opened the annex door and seen [sic] that the machine was gone.

\* \* \* \* \* \*

Q. When you observed the cigarette machine not at its location what did you do?

A I said, 'Is that the cigarette machine from here? We better take it back.' The person over here said, 'It belongs to Frank.'

Q Now, according to your actions you have just pointed to a person; which individual were you pointing to?

A The gentleman at the desk in the white T-shirt.

MR. MCDONALD: May the record show that this witness is referring to Pedro Moreno?

THE COURT: The record may so show.

BY MR. MCDONALD:

Q Where was Pedro with reference to the cigarette machine?

A Standing there. They sat [sic] the machine down and he was on one side and his brother—I believe that is Frank—and a person that was a tenant there, Jerry Freeman, was standing around the machine. They set it down and I believe Pedro had a pillow case from the hotel in his hand using it for the edge.

Q You say that Pedro had a pillow case?

A Yes.

Q Pedro said that the cigarette machine belonged to Frank?

A Yes, to Frank. I'm not certain that the name was Frank—it was the person who brought the message up for Jerry Freeman.

\* \* \* \* \* \*

Q Are you absolutely certain that Pedro Moreno is one of the three individuals who [sic] you saw on that evening with the cigarette machine?

A If it's not him it was someone that looked exactly like him."

The judgment is affirmed.

HATHAWAY and HOWARD, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.